UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RYOKAN COLLEGE, FARNAZ SAMAVI, and RICHARD LEUTENBACHER,<br><br>    Plaintiffs,<br><br>    v.<br><br>BOARD OF PSYCHOLOGY, STEPHEN PHILLIPS, NICOLE J. JONES, LUCILLE ACQUAYE-BADDOO, SEYRON FOO, MICHAEL ERICKSON, JACQUELINE HORN, and ALITA BERNAL,<br><br>    Defendants. | No. 2:18-cv-00106-MCE-KJN<br><br>**MEMORANDUM AND ORDER** |

Through the present lawsuit, Plaintiff Ryokan College as well as two of its students, Plaintiffs Farnaz Samavi and Richard Leutenbacher ("Plaintiffs" unless otherwise indicated) sue California's Board of Psychology and its individual board members ("Defendants") on various grounds, including constitutional due process and equal protection violations, as well as interference with contract and prospective economic advantage. Defendants now move to dismiss Plaintiffs' Complaint both under Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6).[1] Defendants' jurisdictional

---
[1] All further references to "Rule" or "Rules" are to the Federal Rules of Civil Procedure unless otherwise noted.

1

arguments are three pronged: they claim not only that Plaintiffs lack Article III standing, and that the case is not yet ripe for adjudication due to the lack of any concrete injury, but also that Defendants are immune from liability under the Eleventh Amendment to the United States Constitution. While Defendants also claim that Plaintiffs have failed to state viable claims in any event, and that their claims fail substantively under Rule 12(b)(6), the court need not reach those arguments because it concludes that Plaintiffs' Complaint fails on a jurisdictional basis. Consequently, for the reasons set forth below, Defendants' Motion is GRANTED.[2]

## BACKGROUND

Plaintiff Ryokan College is a not-for-profit institution of higher education founded in the State of California in 1978. It offers degree programs in psychology, including both master's and doctorate degrees. Ryokan currently lacks either national or regional accreditation but has been approved by California's Bureau for Private Post-Secondary Education ("BPPE").

Defendant Board of Psychology is a state agency organized under the auspices of California's Department of Consumer Affairs, which is also a state agency. Compl, ¶ 2; Cal. Bus. & Prof. Code §§ 100-101. The Board is tasked with the licensing, regulating, and disciplining of psychologists practicing within the State of California. Id. at § 2922. In carrying out its duties in that regard, the Board is expressly limited to those statutory powers conferred by the Legislature. Id. at § 1088 (the Board's functions can be exercised only "insofar as [said] powers are given by statute to [the Board].") The Board's power does not extend to enacting legislation (id. at §§ 108, 2900, et seq.), and the California Constitution expressly provides that the Board has no power or authority to declare a statute unconstitutional or unenforceable, or to otherwise refuse to enforce a

---

[2] Having determined that oral argument would not be of material assistance, the Court ordered this matter submitted on the briefs in accordance with Local Rule 230(g).

statute on the basis that it violates the constitution or federal law, absent an appellate court determination of such violation. Cal. Const., art. III, § 3.5(a)-(c).

The California Legislature, for its part, has enacted the Psychology Licensing Law Act ("the Act") in order to regulate the practice of psychology. Cal. Bus. & Prof. Code § 2900, et seq.; § 2928. The Board is legally mandated to administer and enforce the Act, and consequently is authorized to issue only a license to those practitioner applicants who meet licensing requirements. See id. and § 2948.

In August 2016, the California State Legislature, apparently concerned about its oversight responsibility in protecting the public from the unqualified practice of psychology, passed Senate Bill 1193 ("SB 1193"). SB 1193 amended the Act to require, beginning on January 1, 2020, that applicants seeking to practice psychology in California possess a psychology degree issued by a regionally accredited institution. Id. at § 2914(c)(1).[3] By deferring imposition until 2020, the Legislature's intent was to exempt students already enrolled in programs that would not currently qualify under the new law. In addition, those enrolled in nationally accredited or BPPE-approved institutions prior to December 31, 2016 are exempt from the new eligibility requirements, which reflects the fact that prior to the amendment, the Act permitted graduates with doctoral degrees in psychology obtained from either accredited schools or schools approved by the BPPE to apply for licenses to practice psychiatry in California.

Ryokan claims to have been harmed as a result of the Legislature's new regional accreditation requirement because of its potential impact on students enrolling after December 31, 2016. This is because, according to Ryokan, it will be "virtually and practically impossible" for it to secure regional accreditation by January 1, 2020 so as to permit those students to apply for California licensure. Compl., ¶¶ 4, 31. Ryokan points

---

[3] According to the legislative history, these changes had been contemplated for several years and were intended to address a variety of concerns about the licensing of applicants from unaccredited schools. See Sen. Rules Com., Off. Of Senator Floor Analyses, 3d reading analysis of Sen. Bill No. 1193, as amended Aug 18, 2017, pp. 7-8, as attached as Ex. 1 to Defs.' Request for Judicial Notice. Defendants' Request for Judicial Notice, made pursuant to Federal Rule of Evidence 201, is unopposed and is GRANTED.

out that before the Legislature enacted its 2016 requirement that post-secondary institutions be regionally accredited by 2020, it had already, in 2014, amended the California Private Post-Secondary Act of 2009 to require that degree-granting institutions be nationally accredited by July 1, 2020 in order to receive BPPE approval. Cal. Educ. Code § 94885.1. Therefore, according to Ryokan, it has been placed in a position of working towards obtaining national accreditation only to face an additional, and even more onerous, requirement that it become regionally accredited under the same time parameters. Although Ryokan is hopeful that it can obtain national accreditation by 2020 as required by the 2014 amendments, it believes it will be all but impossible to obtain regional accreditation within the same period, as the additional 2016 legislative mandate now requires, since regional accreditation is a multi-year process, often taking between six and eight years. According to Ryokan, these timing difficulties are compounded by the fact that regional accrediting agencies often want schools to become nationally accredited before even applying for regional accreditation.

In filing the present lawsuit, Ryokan asks the court to invalidate the 2016 revisions made by the Legislature to the California Business and Professions Code that are scheduled to go into effect in 2020. Ryokan claims that those revisions restrict its right to engage in a lawful private business and further infringes on the rights of Ryokan's students who enrolled in the college after December 31, 2016. Those students, which apparently include Ryokan's named co-plaintiffs, Farnaz Samavi and Richard Leutenbacher,[4] may be forced either to withdraw from Ryokan and apply for enrollment in a regionally accredited institution or be potentially deprived of their eligibility to apply for licenses to practice psychiatry should they stay and graduate from Ryokan. Given the implications of that choice, Ryokan fears that it may have to close its doors.

////

////

---

[4] The Complaint does not specifically state whether Samavi and Leutenbacher enrolled in Ryokan College before or after the December 31, 2016 exemption cut-off date, although it does state that they will be "drastically impacted" by the new 2016 statutory requirement. Compl, ¶ 27.

**STANDARD**

Federal courts are courts of limited jurisdiction, and are presumptively without jurisdiction over civil actions. Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 377 (1994). The burden of establishing the contrary rests upon the party asserting jurisdiction. Id. Because subject matter jurisdiction involves a court's power to hear a case, it can never be forfeited or waived. United States v. Cotton, 535 U.S. 625, 630 (2002). Accordingly, lack of subject matter jurisdiction may be raised by either party at any point during the litigation, through a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1). Arbaugh v. Y&H Corp., 546 U.S. 500, 506 (2006); see also Int'l Union of Operating Eng'rs v. Cnty. of Plumas, 559 F.3d 1041, 1043-44 (9th Cir. 2009). Lack of subject matter jurisdiction may also be raised by the district court sua sponte. Ruhrgas AG v. Marathon Oil Co., 526 U.S. 574, 583 (1999). Indeed, "courts have an independent obligation to determine whether subject matter jurisdiction exists, even in the absence of a challenge from any party." Id.; see Fed. R. Civ. P. 12(h)(3) (requiring the court to dismiss the action if subject matter jurisdiction is lacking).

There are two types of motions to dismiss for lack of subject matter jurisdiction: a facial attack and a factual attack. Thornhill Publ'g Co. v. Gen. Tel. & Elec. Corp., 594 F.2d 730, 733 (9th Cir. 1979). Thus, a party may either make an attack on the allegations of jurisdiction contained in the nonmoving party's complaint, or may challenge the existence of subject matter jurisdiction in fact, despite the formal sufficiency of the pleadings. Id.

When a party makes a facial attack on a complaint, the attack is unaccompanied by supporting evidence, and it challenges jurisdiction based solely on the pleadings. Safe Air for Everyone v. Meyer, 373 F.3d 1035, 1039 (9th Cir. 2004). If the motion to dismiss constitutes a facial attack, the Court must consider the factual allegations of the complaint to be true, and determine whether they establish subject matter jurisdiction. Savage v. Glendale High Union Sch. Dist. No. 205, 343 F.3d 1036, 1039 n.1 (9th Cir.

2003). In the case of a facial attack, the motion to dismiss is granted only if the nonmoving party fails to allege an element necessary for subject matter jurisdiction. Id. However, in the case of a factual attack, district courts "may review evidence beyond the complaint without converting the motion to dismiss into a motion for summary judgment." Safe Air for Everyone, 373 F.3d at 1039.

In the case of a factual attack, "no presumptive truthfulness attaches to plaintiff's allegations." Thornhill, 594 F.2d at 733 (internal citation omitted). The party opposing the motion has the burden of proving that subject matter jurisdiction does exist, and must present any necessary evidence to satisfy this burden. St. Clair v. City of Chico, 880 F.2d 199, 201 (9th Cir. 1989). If the plaintiff's allegations of jurisdictional facts are challenged by the adversary in the appropriate manner, the plaintiff cannot rest on the mere assertion that factual issues may exist. Trentacosta v. Frontier Pac. Aircraft Ind., Inc., 813 F.2d 1553, 1558 (9th Cir. 1987) (quoting Exch. Nat'l Bank of Chi. v. Touche Ross & Co., 544 F.2d 1126, 1131 (2d Cir. 1976)). Furthermore, the district court may review any evidence necessary, including affidavits and testimony, in order to determine whether subject matter jurisdiction exists. McCarthy v. United States, 850 F.2d 558, 560 (9th Cir. 1988); Thornhill, 594 F.2d at 733. If the nonmoving party fails to meet its burden and the court determines that it lacks subject matter jurisdiction, the court must dismiss the action. Fed. R. Civ. P. 12(h)(3).

A court granting a motion to dismiss a complaint must then decide whether to grant leave to amend. Leave to amend should be "freely given" where there is no "undue delay, bad faith or dilatory motive on the part of the movant, . . . undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of the amendment . . . ." Foman v. Davis, 371 U.S. 178, 182 (1962); Eminence Capital, LLC v. Aspeon, Inc., 316 F.3d 1048, 1052 (9th Cir. 2003) (listing the Foman factors as those to be considered when deciding whether to grant leave to amend). Not all of these factors merit equal weight. Rather, "the consideration of prejudice to the opposing party . . . carries the greatest weight." Id. (citing DCD Programs, Ltd. v. Leighton, 833 F.2d 183,

185 (9th Cir. 1987)).  Dismissal without leave to amend is proper only if it is clear that "the complaint could not be saved by any amendment."  Intri-Plex Techs. v. Crest Group, Inc., 499 F.3d 1048, 1056 (9th Cir. 2007) (citing In re Daou Sys., Inc., 411 F.3d 1006, 1013 (9th Cir. 2005)); Ascon Props., Inc. v. Mobil Oil Co., 866 F.2d 1149, 1160 (9th Cir. 1989) ("Leave need not be granted where the amendment of the complaint . . . constitutes an exercise in futility . . . .").

## ANALYSIS

### A. Article III Standing

Standing is a jurisdictional requirement that Plaintiffs, as the parties invoking federal jurisdiction in this matter, have the burden of establishing.  Lujan v. Defenders of Wildlife, 504 U.S. 555, 561 (1992).  Article III standing requires not only an injury in fact, but also a causal connection between defendants' conduct and a showing that action by the court can redress that injury.  As the Supreme Court explains:

> First, the plaintiff must have suffered an "injury in fact" – an invasion of a legally protected interest which is (a) concrete and particularized, and (b) "actual or imminent, not 'conjectural' or 'hypothetical.'"…Second, there must be a causal connection between the injury and the conduct complained of-- the injury has to be "fairly…trace[able] to the challenged action of the defendant, and not…the result [of] the independent action of some third party not before the court."… Third, it must be "likely," as opposed to merely "speculative," that the injury will be "redressed by a favorable decision."

Id. at 560-61 (internal citation and formatting omitted).

Here, the licensing requirements objected to by Plaintiffs do not go into effect until January 1, 2020.  Although a pre-enforcement action like this one can potentially demonstrate standing by showing a "genuine threat of enforcement," there must still be "an injury in fact."  See MedImmune, Inc. v. Genentech, Inc., 549 U.S. 118, 128-29 (2007).  As indicated above, to qualify in that regard the injury must be to a legally protected interest that is "concrete and particularized" and "actual or imminent" as

7

opposed to a merely conjectural or hypothetical injury.  Lujan, 504 U.S. at 560-61; Spokeo v. Robins, 136 S. Ct. 1540, 1548 (2016).

In the Court's estimation, the Complaint does not demonstrate that any of the Plaintiffs have suffered the requisite "injury in fact."   Instead, Ryokan merely speculates about future harm that may result when Section 2914's regional accreditation requirement goes into effect in January of 2020.  Compl, ¶ 32 (stating that the school "may be forced to go out of business"); see also ¶ 33 (asserting that at some point in the fact, an undefined number of students may be forced to withdraw from the school).[5] Moreover, the individually named Plaintiffs, Samavi and Leutenbacher, claim broadly that will be "drastically impacted" if the legislation remains in effect, yet fail to allege a single fact demonstrating that they have suffered or will imminently suffer concrete harm.[6]

The second requirement for standing, that the injury be causally connected to Defendants' conduct, is equally unavailing.  While the Complaint appears to generally allege that Defendants' recommendations somehow led to the enactment of the challenged legislation, it is uncontroverted that Defendants themselves have no power to enact licensing laws, with that power instead being vested in the California Legislature. Additionally, to the extent that Defendants are entrusted with enforcing licensing requirements, including Section 2914's mandate for regional accreditation as of 2020, there is no such enforcement requirement now.  Even if there were, the mere enforcement of legislative enactments has been held to not establish, for standing purposes, a causal relationship between the enforcing party and the resulting harm.

---

[5] While Ryokan appears to allege in opposition to Defendants' Motion that they are "already losing actual and prospective students" because of the impossibility of meeting the two statutory deadlines (see Pls.' Opp., 4: 18-19), the Complaint itself contains no such allegations.

[6] While Plaintiffs appear to rely on the Southern District's decision in Cornwell v. Cal. Board of Barbering and Cosmetology, 962 F. Supp. 1260 (S.D. 1997) to support this Court's jurisdiction in this matter, Cornwell does nothing to help Plaintiffs show that an "injury in fact" sufficient for standing purposes has been identified.  In Cornwell, actual citations had been issued to the plaintiffs in that case for their failure to have cosmetology licenses.  Id. at 1263-66.  Here, on the other hand, Plaintiffs' Complaint contains no analogous allegation of actual injury as opposed to future, speculative harm.

O'Bannon v. Town Court Nursing Center, et al, 447 U.S. 773, 786-87 (1980) (denying standing to nursing home residents who were forced to move when the nursing home lost its certification following a state enforcement action, because the harm to those residents was "an indirect and incidental result of the Government's enforcement action"). Here, as Defendants point out, the California Legislature, in requiring regional accreditation under Section 2914, took action independent from any enforcement that Defendants could undertake, and the Legislature's enactment in that regard, and its status as an absent third party, precludes any causal connection between Plaintiffs' harm and Defendants herein. Even Plaintiffs concede that "[l]icensing standards are within the purview of the State legislature." Compl, ¶ 4. Significantly too, once Section 2914's new regional accreditation requirement was enacted, Defendants' role was limited to administering and enforcing its new requirement. Cal. Bus. & Prof. Code § 2928, Cal. Const., art. III, § 3.5(a)(c). That obligation will not even begin until 2020. All of this renders implausible any contention that Defendants' conduct had the requisite causal connection with Plaintiffs' alleged harm.

   Finally, with regard to the third and final prerequisite for standing, it does not appear that a favorable decision from this Court can redress Plaintiffs' claimed injuries. An injunction against Defendants would not remove Section 2914 from the books and, as indicated above, the Board is duty bound to enforce the law as enacted by the Legislature in any event. The Court agrees with Defendants that since any injury identified by Plaintiffs' Complaint does not theoretically arise until 2020, if at all, the proper procedure for seeking redress lies with legislative action as opposed to this lawsuit. See Nat'l Ass'n for Advancement of Psychoanalysis v. Cal. Bd. of Psychology, 228 F.3d 1043, 1050-51 (9th Cir. 2000) (the legislature, and not the courts, are best suited to determine the licensing requirements for psychology professionals so long as there is a rational basis for such requirements). While Plaintiffs contend that Defendants were "unaware" of the problems with making "'regional accreditation' a new and to some extent inconsistent requirement" (see Opp., 6:27-28), the fact remains that it was the

Legislature, and not Defendants, who enacted the challenged amendment to Section 2914 in 2016.

Consequently, the Court cannot conclude that Plaintiffs have demonstrated Article III standing at this time, and their Complaint as currently constituted fails on that basis.

**B.     Ripeness**

The doctrine of ripeness is also a jurisdictional concept designed "to prevent the courts, through premature adjudication, from entangling themselves in abstract disagreements" that do not yet rise to the level of a concrete case or controversy. Thomas v. Union Carbide Agric. Prod. Co., 473 U.S. 568, 580 (1985). Whereas standing is concerned with whether the right party is suing, ripeness hinges on whether the lawsuit is brought at the proper time. See id., citing Regional Rail Reorg. Act Cases, 419 U.S. 102, 140 (1974). "A claim is not ripe for adjudication it it rests upon 'contingent future events that may not occur as anticipated, or indeed may not occur at all.'" Texas v. U.S., 523 U.S. 296, 300 (1998), citing Thomas, 473 U.S. at 580-81. The ripeness inquiry has thus been characterized as "standing on a timeline" in which the key determination is whether the case and controversy is such that judicial intervention is necessary. Bova v. City of Medford, 564 F.3d 1093, 1096 (9th Cir. 2009). Consequently, while ripeness and standing are related concepts and tend to significantly overlap, particularly in pre-enforcement challenges to laws and regulations, they still should be addressed separately. See, e.g., Eternal Word Tel. Network, Inc. v. Sebelius, 935 F. Supp. 2d 1196, 1213 (N.D. Ala. 2013).

As far as can be deduced from the Complaint as it now stands, any controversy presented by this matter will be ripe only when the January 1, 2020, deadline for securing accreditation arrives, and then only if Ryokan has failed to obtain regional accreditation by that time. As Defendants point out, because both events are both future and uncertain, they are accordingly not yet ripe for adjudication. See Thomas v. Anchorage Equal Rights Com'n, 220 F.3d 1134, 1138 (9th Cir. 2000) (proper role of the court is "neither to issue advisory opinions not to declare rights in hypothetical cases, but

to adjudicate live cases or controversies."). Accordingly, Plaintiffs' Complaint is also dismissed on jurisdictional grounds for lack of ripeness.

### C. Eleventh Amendment Immunity

The Eleventh Amendment to the United States Constitution bars a citizen from bringing suit against his own state in federal court, absent the state's consent. Pennhurst State Sch. and Hosp. v. Halderman, 466 U.S. 89, 98-100 (1983). Because the Eleventh Amendment bar is also jurisdictional, federal courts are precluded from entertaining suits against the state. See Alabama v. Pugh, 438 U.S. 781, 782 n. 1 (1978). Eleventh Amendment immunity also applies to state agencies (Edelman v. Jordan, 415 U.S. 651, 663 (1974)), and to state officials sued in their official capacities because "an official capacity suit, is, in all respects other than name, to be treated as a suit against the entity." Kentucky v. Graham, 473 U.S. 159, 166 (1985).

The sweep of Eleventh Amendment immunity is nonetheless limited, at least in certain circumstances, by the so-called Ex parte Young exception. As the Supreme Court has noted, however, "[t]his exception is narrow: It applies only to prospective relief, does not permit judgments against state officers declaring that they violated federal law in the past, and has no application in suits against the States and their agencies, which are barred regardless of the relief sought." Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc., 506 U.S. 139, 146 (1993) (internal citations omitted). Therefore Ex parte Young only permits a suit in federal court seeking prospective relief against a state official acting in violation of federal law. Pennhurst, 465 U.S. at 102-06. In addition, to be valid, an official capacity suit mounted under Young must, in addition to seeking prospective relief, allege "an ongoing violation of federal law." Verizon Md., Inc. v. Public Service Comm'n of Md., 535 U.S. 635, 645 (2002).

Here, the Board is unquestionably a state agency, with Eleventh Amendment immunity therefore barring Plaintiffs' claims against the Board directly. In addition, there is no dispute that the individual Board members named in the Complaint are being sued

in their official capacity only. With respect to whether Plaintiffs can nonetheless maintain an action against Board members under Young because they are committing any "ongoing violation of federal law," no such violation has been properly alleged. To the contrary, the Complaint does not currently reflect any present injuries, let alone continuing ones, and no ongoing violation of law since Section 2914's regional accreditation requirement does not become operative until January 1, 2020. Nor does the Complaint even allege facts demonstrating just any wrongdoing on Defendants' behalf, because it was the California Legislature, as opposed to the Board or its individual members, that amended the accreditation requirements at issue. Consequently, Eleventh Amendment immunity appears to bar Plaintiffs' lawsuit at this time as well.

**CONCLUSION**

For all the foregoing reasons, Defendants' Motion to Dismiss (ECF No. 9) is GRANTED. Plaintiffs may file a First Amended Complaint, should they wish to do so, not later than twenty (20) days after the date this Memorandum and Order is electronically filed. Failure to timely file an amended pleading will result in this matter being dismissed with prejudice and without further notice to the parties.

IT IS SO ORDERED.

Dated: January 16, 2019

MORRISON C. ENGLAND, JR
UNITED STATES DISTRICT JUDGE